Good morning, Your Honors. May it please the Court, I'm Rebecca Hall. I represent the C.B. Richard Ellis LTD plan. Okay. Let's see if you can snatch victory from the jaws of defeat. Well, Your Honor, I believe one of my very first experiences with the Ninth Circuit was with you, but that was more years ago than I care to think about. Okay. How did you do? Not as well as I should have, in my view. Who are you representing? I was representing at the life insurance company on a premium waiver issue. See, it stood out in my mind. Your Honors, I think I need to just reiterate what this case is about and what it's not about from our perspective on appeal. It is not about challenging the factual determination that the district court made as to whether Mr. Mitchell was disabled. It is, however, about the fact that the district court's decision conflicts very sharply with all the existing jurisprudence we've been able to find on the particular question presented, which is whether it is possible through a concept of waiver or estoppel to effectively put someone in a plan, put someone in coverage that never, ever applied to them. And that is, in fact, what we're talking about. And, in fact, it goes a bit farther than that. If you look at the district court's findings and conclusions at Excerpts of Record 36, which is also page 36 of that finding and conclusion. Excerpt 36? Yes. Conclusion for the foregoing reasons. MET abused that. MET waived its lack of coverage defense by not raising that reason during the administrative review. Yes, but look below that, because the last sentence on the page says Mitchell is entitled to LTD benefits under the MET policy, which we all agree did not take effect until January 1, 2004, for the 24-month period from October 2003 through September 2005. So we have very clearly a situation in which the district court is imposing on this contract, under this contract, that did not exist. Does everybody agree with that? No, everybody agrees with that. And you got hit by a failure to have brought it up at the appropriate time, said Judge Parkerson. That was the district court's view. I seriously disagree with that as well. First of all, did you bring it up when you could have at the earlier phase? Well, what the district court said was you should have put in your denial letter where you said we don't think you're disabled, effectively. But if we thought you were disabled, then we would think that a different policy applied. So you were making a merits determination on a situation where there was no coverage to start with. Yes. And I agree that that doesn't make sense, and they should have thought about it. Right. But the fact is, taking the district court's approach gives him coverage that never, ever applied to him, whereas the plan had a contract in place to cover disabilities that arose in 2003. There's a lot of loose use of words, like there's waiver, which is a known voluntary relinquishment, but then there's also forfeiture. This sounds to me more like forfeiture. I guess you like the Giuliano case that says there are some things that you can't either waive. Well, I guess you could waive it, but you can't forfeit it like coverage. Yes, but there are a number of them. Excuse me. Is the only basis of your claim that there was no coverage, that the ailment arose prior to the time coverage began? That is the issue that's before the Court, yes, the fact that he never came under the coverage of this policy ever, because... And that depends on when he became seriously disabled. Well, and the district court found that he was entitled to payment as of October 2003, and that... But he wasn't disabled under the terms of the Unum policy. Well, I... I mean, if he had applied to Unum at the first signs of this sort of degenerative illness he had, Unum wouldn't have covered him. I think that he was disabled under the Unum policy, but that's an issue that the district court never reached. Well, I mean, we read it. I mean, we can read it. And it doesn't fit the terms because of the 80 percent, 20 percent. But that's exactly – it's a mirror image of the coverage under the MetLife policy. One says a drop of 20 percent. One says you can't earn more than 80 percent. When you put those together, you have 100 percent. And it's clear that when that happened was in 2003, because in 2003 he made $19,000 as opposed to something like $260,000 in 2002. Does he say that he was never disabled at all? So how can you say it's clear he became disabled before your policy started? What I'm saying is we are not in this appeal challenging the district court's finding that he was disabled. No, I know, but at the time you refused coverage to him. You said he was never disabled. That's correct, which is why they didn't... Now you say it's clear he became disabled before your policy started. What I'm saying is... I mean, I said one of these diseases is progressive. It's sometimes hard to determine when somebody actually becomes disabled. But the district court made a determination on that. The district court looked at all the records and said, first of all, that's what Mr. Mitchell himself said in his claim, was that he was disabled by October of 2003. And the district court's ruling accepted that. We are saying if the district court is correct, and we aren't challenging that because it is, in fact, as I am well aware, very difficult to challenge the factual determinations of a court. But accepting that, the district court seriously erred in saying, we're going to put him under the coverage of this policy that did not take effect until January 1, 2004, and that by its very term said you are not eligible for coverage under this unless you become disabled while you are covered, and that can't happen before January 1, 2004. Where in the MetLife policy does it say that it only provides coverage if the disability begins when the participant is insured? Do you have a record citing that? That is in Excerpts of Record 96. 96. And then if you combine that with particularly 99. Wait, it's 96 and 99? Right, but specifically 96 is where it sets out that specific date. What's the language of that? It says under the date you are eligible. Are you reading from your brief or from the policy? This is from the Excerpts of Record. Policy. It's the policy. The policy, yes. Excerpts of Record, page 96. It's under the heading date you are eligible for insurance. You may only become eligible for the insurance available for your eligible class, as shown in the schedule of benefits. You will be eligible for insurance described in this certificate on the later of January 1, 2004, or the first day of the calendar month you complete the waiting period, which didn't apply to him because he wasn't a new employee. So. In the district court's findings, it quotes something that says rules for preexisting conditions and determining whether a disability is due to a preexisting condition will credit you for any time you insured under the prior plan. If your disability is due to a preexisting condition, but would not have been due to a preexisting on the prior, we will pay a benefit equal to the, it goes on. That doesn't cover this? The question of preexisting conditions is a different question from eligibility, and the reason it matters is that a question of plan interpretation of someone who otherwise is covered is something that could be waived, which the district court found occurred. But a question of basic eligibility under the plan, the basic question of did you ever come under this policy, is something that, in fact, cannot be accomplished through waiver. Why can't you ever come under the policy just because you became disabled earlier? Because. If you say if it's a preexisting condition, you'll be covered. How is that consistent with saying it has to arise after your coverage began? There are two different questions here, Your Honor. And the reason there are two different questions in this case is because what we have is a district court saying. No, no, forget the district court. Okay. I'm talking about your coverage under the policy. You say that he couldn't be covered if the condition arose before his coverage under the policy started. Right. But there's a different provision that says the disability has to arise while you're covered. You could have a preexisting condition, Your Honor. For instance, suppose that Your Honor had, I don't know. Almost anything. All right. Suppose that a hypothetical person has diabetes and they become covered under the policy because they're working. They're functional. They don't have a problem. Wasn't he working, though? He was working on the date before the replacement date. He was showing up at work, but he wasn't apparently working. According to him, he had been disabled for three months at that point before our policy took effect. That's what his claim said. And that is effectively what the district court accepted, although, in fact, the district court's ruling would have to mean that he was, in fact, totally disabled in July of 2003 because you don't get benefits paid to you until you've been disabled for 90 days. So that would have to back up the finding of total disability to July of 2003 in order for benefits to be payable as of October 2003. Let me go back to the district court's basic reasoning. The district court cites Jebion, you know that, and quotes it. It says, by the Ninth Circuit, it is explained that district courts are limited to review of the reasons for denial asserted during the administrative process to prevent an administrator from sandbagging an employee. Quote, by our rationale, the plan administrator reduces only after the suit has commenced. Why aren't we bound by that? You cite us as Southern District of New York district court case. Because, Your Honor, it's two different things. Jebion was talking about things that an individual could present to the administrator, for instance, if they only knew. So that, for instance, and I think this is probably why the district court said what it said about the preexisting condition issue. You can't bring that up now. You can't rely on that because that wasn't told to him at the time. But Jebion was focused on fairness to the individual who needs to be able to come back and say, but wait a minute, here's these other records you should look at that show that I am, in fact, right. And if you had just told me this before, I would have shown you. Why can't the individual come back and say, it's baloney, I am covered, here's why. Because he can't. Because the problem is that would be completely contrary to every representation he made about when his disability started. And he can't bring himself under the policy by saying something different from what he said before. You're arguing in your brief that Jebion really is inapposite and we ought to go with Giuliano, the other circuits. Well, there are a number of cases from other circuits. They go both ways in other circuits. Not on this particular issue. Not on this particular issue. We didn't find anything that said you can create coverage that doesn't otherwise exist by this means. Assuming it doesn't otherwise exist. And that's not clear to me, at least, that it doesn't exist. But, Your Honor, how can we have an order saying this policy that took effect on January 1, 2004, requires the company that issued this policy to pay benefits starting in October of 2003. That is creating coverage and liability that never existed. Well, if you're right, and, you know, there's a lot to figure out about this case, because, you know, a lot of inconsistent positions on both sides. But if you're right that the district judge said you can't raise the issue, and maybe you're right that he can't make it effective prior to the date of your coverage. Well, that takes care of a little bit of your problem, but not most of it. Well, I disagree, Your Honor, because you have to become disabled while covered. So I don't think you can just lop off the first three months the district judge awarded. But I see I'm down to less than two minutes. I'd really like to reserve a little bit, because I have two people to respond to. Okay. Thank you. Thank you. Good morning, Your Honors. Peter Sessions on behalf of the plaintiff, Michael Mitchell. MetLife is strenuously trying to make this case a case about waiver. And as we pointed out in our brief, and as you mentioned, this really isn't a waiver case so much as it is a forfeiture case. And these terms get bandied about, and they have different meanings and different contexts. But what the district court did in this case was apply a longstanding rule of erissa jurisprudence that many courts and many districts and many circuits have applied. It's a simple rule that simply says that claim administrators can't raise defenses after the fact that the budget is their claim. Use it at the right time or lose it. That's correct. And the origin of this rule is in the statute and in the regulations implementing the statute, which say that claimants are entitled to the specific reasons for their denials, and that if their claim is denied, they're entitled to a full and fair review on appeal. And what these courts have said is claimants do not get a full and fair review on administrative appeal. And when they're not told the real reasons for their denial and when plaintiff administrators come up with these defenses after the fact. You know the other side said, well, this is different because this is creating coverage where arguably there was none, so we ought to follow Lauder and Giuliano and all the rest. I understand that argument. The first thing I'd point out is that there aren't any controlling cases from this circuit that hold the way MetLife would like the court to hold. MetLife also I don't think adequately explains what it is about coverage that's so special that it can't be waived as opposed to these other contractual provisions. Is it about coverage? I have a question. Sure, I understand why it's about coverage. Is it because he wasn't disabled at all? Or is it because it didn't start after the policy started? Do you agree that if it didn't start until after the policy started, that it's not covered under the policy? No. What we're arguing is that that defense is something that can be waived. No, no, I'm not asking whether it can be waived. I'm asking you whether you agree that under the policy, there's no coverage if the ailment began prior to the time this policy started. Well, under the the district court made a finding that Mr. Mitchell was disabled as of October of 2003, and we're not disputing that MetLife's coverage began on January 1st of 2004. What our argument is is No. Does that mean that he has no coverage under MetLife because it began earlier? Well, if MetLife had raised that defense, then yes, we would be contending that it was Unum's coverage and not MetLife's coverage. But he wouldn't have been covered under Unum because he didn't meet their definition. Well, I respectfully disagree with that. I think if the court looks at the definitions of disability under the Unum policy and the MetLife policy, I think the court will find they're very similar. But then again, we don't have findings from the district court below as to Unum's policy. Well, the district court also didn't believe and viewed with skepticism the reasons that Met did give for denying the coverage. But how do we evaluate that in connection with their argument? Well, there wasn't any coverage at all, so it didn't matter what our reasons were. Well, that's certainly their argument. As I understand MetLife's argument, all of the district court's findings with regard to how MetLife improperly adjudicated the claim are irrelevant because there was never any coverage in the first place. That's my understanding of the argument. But I don't think that there's any reason why the court can't find that MetLife waived its right to make that contention in the first place. And I think the reason for that is found both in the cases I already mentioned, which I've held for some time without any controversy, that you can't bring these post hoc defenses after the fact. And it's certainly justified by the fact... Well, I don't think we have a case in the Ninth Circuit that extends that to the issue of whether there's coverage or not. Is there a case in this circuit that forecloses the other side's argument? Not that I'm aware of, no. The Giuliano case addresses all the issues that you bring up, and it pretty much says that if we do what you want, then the notices would threaten to become meaningless catalogs of every conceivable reason that the cost in question might not be reimbursable, instead of candid statements as to why the administrator framing the notice thinks reimbursement is unwarranted. Is that a frivolous concern? Well, I have two responses to that. With all due respect to the Second Circuit, I don't think the Giuliano case is persuasive. One, because that specter of the catalog of defenses, I think, practically isn't realistic. In most cases, certainly... You create some boilerplate thing with every possible thing under the... That's what I do. Well, I just don't think it's realistic. Certainly in disability cases like this one, there are two, maybe three issues in every claim that need to be addressed. There's very rarely a situation where there are 20 or 30 different possible defenses that might be available. Well, this is the most obvious one, too. You're either covered within this policy period or you're not covered. You're not. And that's the first thing insurance... Well, I know it's the first thing a lawyer representing an insurance company would look at, is did this arise during the term of coverage of this policy? I agree. That is the first thing that I think the insurance company should have done. Yeah, and look at the disaster that the failure to do that has created. That's right. Endless litigation. And the other response I have with regard to Giuliano is that I don't think it's persuasive because what that court did was essentially directly import the common law doctrine of waiver into ERISA jurisprudence. If you look at the Giuliano case, there's lots of citations to New York state law, and what they're doing is they're lifting this common law doctrine of waiver and applying it in ERISA context. And what this court has held, and what most circuit courts have held, is that if a court is going to import the common law of doctrines into ERISA jurisprudence at all, and the court has cautioned that it shouldn't even do that unless there's some need to fill in the gaps interstitially, if the court is going to do that, it needs to import that common law doctrine in a way that's consistent with the statute. And so what we've argued in our brief is that the purpose of the statute is unmistakable. It's designed to protect beneficiaries. It's designed, along with implementing regulations, to provide for a process where there can be communication between the plain administrator and the claimant and where issues can be resolved efficiently and economically. And the kind of rule announced, or at least that Giuliano would attempt to have, essentially leaves us in a situation where plain administrators can reserve defenses and then drop them out when they're necessary. And it has the effect of doing exactly what this court warned about in Jebian, which is sandbagging claimants, where plain administrators keep their defenses to themselves and then only bring them out when they need to. And that's the kind of thing that is contrary to the purpose of ERISA in resolving these kinds of issues economically. Can you explain how, if the MetLife policy coverage started in 2004 or whatever it was, how the district court can award damages from the end of 2003? Well, we believe that the reason the district court is allowed to do that is because MetLife failed to raise any argument regarding that. But other than that, you can't think of a reason that that could have been done? Well, it's, you know, it's also possible that it could have been eligible for those benefits on January 1st when the coverage began under the very unusual provisions of this particular plan. The plan says that employees have to be actively at work in order to obtain coverage. And as I think it is undisputed, Mr. Mitchell was still going to work on January 1st. So there is a scenario in which I think he could be entitled to benefits on January 1st as opposed to in October. But it's not necessary for the court, in our opinion, to reach that question because MetLife waived that argument in the first instance. You mean in litigation or in the denial? Well, they waived it by not bringing it up during the administrative review process. Okay. I have to split time with Union's counsel, so I'll step down unless the court has any further questions. Good morning, Your Honors. Michael Bernanke for L.A. Union Life Insurance Company. I take a little bit different view of this case. I'm not sure that waiver is really a key issue. I think the bigger issue is whether or not the district court's finding that Mr. Mitchell was disabled in October of 2003 precludes coverage under the MetLife plan. I would argue that it doesn't. It's important to remember that this is a very unusual disability claim. Mr. Mitchell was working full time while he was employed. He was also on he was also not drawing a salary. He was working strictly on commission. Under most policies, an individual would stop working and be eligible for commission. That didn't happen in this case. When you combine it with the unique language of the MetLife policy, what you really have is somebody who was actively at work and disabled at the same time. MetLife claims that if Mr. Mitchell was disabled in October of 2003, he couldn't have come under coverage in its policy, which began on January 1, 2004. However, there is no provision in the MetLife policy which says that. The MetLife policy basically says that in order to be eligible for coverage, all you have to be is actively at work. Mr. Mitchell did meet the definition of actively at work. Mr. Mitchell was actively at work on January 1. The SPD defines actively at work as being on the job. The policy defines actively at work as performing all of the usual and customary duties of your job on a full-time basis. Mr. Mitchell always contended that he went to work. Mr. Mitchell always contended that he did his job. But because of his chronic fatigue, he simply didn't have the energy to produce. Therefore, he had a loss of income. So Mr. Mitchell, as of January 1, excuse me, qualified for the disability benefits or qualified for the coverage. That's because he was not actively at work? He was. No, he was actively at work. He also happened to qualify for disability benefits at that point in time. Because he was actively at work, but he wasn't working. He was actively at work, but he wasn't producing income. They go by percentage of the primary salary. Exactly. It's important to remember that the MetLife policy doesn't have a provision in it which basically says you have to be unable to perform your material substantial duties. All it says for disability is to simply say, all it says for disability is to simply state you have to have an injury or an illness and as a result of that injury or illness have a reduction in your income. That fit perfectly Mr. Mitchell's disability benefit, Mr. Mitchell's disability claims. So what you have here is January 1, he qualified for the policy. Now, MetLife's counsel has argued that, well, Judge Pragerson basically awarded benefits in October of 2003 before we even had coverage. Personally, I don't think that takes them off the hook from January 1 going forward. I would tend to agree with him that if Judge Pragerson meant to say that as of October of 2003, MetLife was responsible for paying benefits, then that would be wrong. But you have to remember that MetLife's policy also had a 90-day waiting period and no benefits would be paid during that 90-day waiting period. Therefore, benefits under the MetLife policy, even with a disability date of October of 2003, would not have begun until January 1, 2004. So we're not expanding coverage in this case. So with UNUM, did he fit the disabled definition for UNUM during that period in October of 2003? Well, I think that's another important thing to point out. I would say no, but it's important to remember that UNUM had its own administrative record. MetLife had its own administrative record. UNUM adjudicated the claim and obtained evidence. MetLife adjudicated the claim and obtained evidence. The court would have to review the UNUM administrative record to make that determination. We also had defenses that MetLife didn't. We had notice of prejudice, for instance. And therefore, it's hard to tell. I will agree with MetLife that the district court never arrived at that decision. And whether or not a finding that he was covered under the UNUM disability plan in October of 2003 would preclude coverage under the MetLife plan, I'm not sure. It might, but there was nothing forcing Judge Pragerson to make that decision. MetLife never filed a cross-claim against us. I don't know. And I think that they could have forced Judge Pragerson at that point in time to make a decision on that issue if they wanted to, but they didn't do that. I can answer your question, but I do really think what we have in this case, the reason we're here is because this is a really unusual disability claim, combined with unusual policy language, and you've created the perfect storm for a disability. Mr. Mitchell continued to work. That's important to remember. He qualified for coverage under the MetLife plan by virtue of his continuing to work. Judge Wardlaw, you mentioned something, or Justice Wardlaw, you mentioned something earlier where you asked MetLife's counsel whether or not there was anything precluding coverage if somebody was disabled before the MetLife plan came into effect. I could not find anything in the MetLife policy. The only issue we have, once again, is whether or not three months of benefits that the court ruled on in 2003 should be paid. I would argue because of the MetLife 90-day elimination period, you don't have to get there. But even if I'm wrong, the simplest solution would just be to award benefits commencing January 1, 2004. It's also another reason this is so complicated is the method of compensation by CDL. It's all commissions. So when you're talking, when you're defining disabilities based on your compensation, it's all commission. You don't know what other factors could have been affecting that as well. And I made that argument down below. I mean, by making this argument, I'm not stipulating necessarily that Mr. Mitchell is disabled. It's very hard when you use earnings as a diagnostic tool to prove somebody's disability. If you look at the fluctuation in earnings, there were some years when Mr. Mitchell allegedly wasn't disabled in 2001, in which he made a lot of money, excuse me, in which he didn't make very much money. And then after he became disabled, there were some years in which he made a decent amount of money. And we're talking about a commercial real estate development company. Judge Gregson gave judgment on the declaratory relief, gave you judgment, I guess, on the declaratory relief without any explanation. I think the explanation was that he did, in his order, he basically found that he did not need to get to the issue of whether Unum covered the claim because he found that MetLife covered the claim. So how do you get declaratory relief on that basis? I submitted the order. And I got it. That's how you get it, you submit it. I can answer any other questions, otherwise I think. Thank you. Thank you. Well, I think we've heard two important concessions here. One is the concession that there is absolutely no explanation, as Your Honor pointed out, for granting declaratory relief to Unum in this case. It's a red herring to say that MetLife didn't file a cross-complaint against Unum. Basically, it had no reason to. There was an existing cross-claim for declaratory relief on the very issue. It would have been a mirror image of that. There was no reason to ask for indemnity because nothing had been paid. So it would not have put us in any different position from the position we're in right now. So could you sue Unum now for indemnification for that portion of the period that you think it should have paid? They probably could file a suit for indemnity, except for the fact that Judge Pregerson, without explanation, granted declaratory relief by issuing judgment in favor of Unum on its cross-complaint for declaratory relief. Did you appeal that? I'm sorry? Did you appeal that? Yes. Yes. Our appeal was both as to the disposition of the cross-complaint for declaratory relief by Unum and as to the disposition of Mitchell's claim. It's right in the notice of appeal. So Unum's counsel is absolutely incorrect about that. We did appeal that. But if we reversed that judgment for declaratory relief, it's their case. I assume they could just dismiss it. They could. MetLife could then file a suit. If they wanted to, it would be timely. There has been no injury yet because there's been no payment. Because, of course, there's been no payment while we're awaiting the result. Well, so if you lose the case against Mitchell, then you can go sue Unum, right? Presumably. But speaking of Mr. Mitchell, Mr. Mitchell also has made an important concession here, which is in response to the Court's questions, he basically agrees that if MetLife, even under Judge Pregerson's analysis, had ever said, oh, and by the way, that was actually Unum's coverage, if you really were disabled, then all bets would be off and it would not be MetLife's coverage. So I think that simply was the case. Well, I didn't have to say that. Well, if you had raised that defense when you refused him coverage, then it would have been necessary to determine whether it was really MetLife's coverage. But you never said it was Unum's coverage. Well, not so much that it was Unum's coverage. That's also a red herring, but that it was not MetLife's coverage, whatever else it may have been. Well, you never said that either. But I also would like to mention a couple of other things. Mr. Mitchell's counsel raised the suggestion that under Jevian, there is some sandbagging issue here. I don't think that's true. He's suggesting, without actually saying it, because there's no such evidence, that Mr. Mitchell was somehow prejudiced by not having a whole lot of hypothetical things raised to him. Well, it's hardly hypothetical. But you say it's a real defense. But it's hypothetical. If what I'm saying to you, Your Honor, is you are not, in fact, disabled, then it's hypothetical to say, but if you were, then it would be not under our policy. If you were, then, for instance, there would be offsets to whatever would be payable. If you were, then you would have to continue to cooperate. Well, that's up to you. It's not hypothetical. If you thought he wasn't covered under the policy, then you could have said, you know, you're not disabled and you're not covered. But if you wanted to litigate only you're not disabled, and that's what you want to base it on, that's your choice. I mean, it's not exactly some remote hypothetical. You tell us he's not covered under the policy. Now you tell us. I understand the Court's position. Okay, but let's not talk about some remote hypothetical off in the distance. No, what I'm saying, though, is there are a number of things that could kick in if they were wrong about are you disabled in any situation. But I would like to just mention one thing, because I'm sure I'm about out of time here. Well, it's very interesting. I'm not sure I was here for the entertainment value. I'm glad I provided some. But the thing is, the suggestion that he somehow is prejudiced by this is wrong. It's wrong because even before there was a decision by NetLife, he had already been told by his employer, as Judge Pregerson acknowledged, that he should have made his claim to UNUM. And he didn't do that. So this is not a situation in which he's been prejudiced at all. In fact, it's a way to try to get a technical argument going to get him under the policy  He has to have been under the policy at the time he becomes disabled. It's not a question of this is not a situation in which NetLife took over an existing claim, which it sometimes does when it buys a book of business, for instance. It didn't do that. It took over as a new insurer. And the prior insurer of the plan, which had a contract with UNUM, was obligated under its contract and according to whatever its terms were, to cover claims that arose for disabilities that arose prior to the NetLife policy incepting. And I know I'm out of time, so that's my submission unless the Court has further questions or requires additional entertainment. Well, interest is not entertaining. It's, you know, it's not the simplest case. No, it isn't. And it's an important, even though we've been laughing about some of this, it's a very important public policy question whether an ERISA plan can be forced to provide coverage to someone who is not, in fact, eligible. Not whether there can be a waiver to someone who is under the plan and is eligible as to a specific plan term, but whether they can be forced into the plan and under the coverage when, in fact, they're not eligible under the terms. You're simply asking for the opportunity to litigate that issue. I'm asking this Court, I guess, to be cognizant of what the jurisprudence is in other jurisdictions. This Court has not addressed it as far as we can tell. Well, you want it sent back to consider the issue. Yes, I think it needs to go back. There are a number of things that need to be addressed, including UNUM's response. You don't want it really sent back to the plaintiffs. You want us to say it should go back to the administrators. I'm sorry? You want us to say it should go back to the administrators. I'm not sure that that's necessary. At a minimum, I think it needs to go back to the district court, because the district court never looked at the respective obligations of UNUM and MetLife. It simply skipped over that and said, send it to UNUM. I don't know. I go back to, well, why so Mitchell sued UNUM. Mitchell sued MetLife. Why was that issue of the respective obligations between UNUM and MetLife, even before him since MetLife, didn't sue UNUM? Because Mitchell sued both. Mitchell sued both, and so he didn't. And because UNUM. Judgment in favor of UNUM on Mitchell, as opposed to Mitchell. And judgment in favor of Mitchell as against you. Why is he supposed to look at the rights as between UNUM and MetLife? Because there was also a cross-complaint expressly tendering that issue to him. And MetLife defended against that cross-complaint, and he refused to even look at those  He never looked at those questions. He never resolved them and expressly said that he did not feel he needed to resolve them. And we feel that that simply is incorrect, particularly where the result of that is he's now telling my client, MetLife, you have to pay these benefits for a period months before your policy ever took effect. I think if that was wrong, that he had the wrong date for when you should pay, that is easily corrected, and that doesn't solve your basic problem. It just cuts off a couple of months. Maybe because of the 90 days, for whatever reason. As I said earlier, the 90 days would necessarily back it up to July, which puts it squarely in the middle of UNUM's coverage. But it's not just a question between UNUM and MetLife. It could be that he was covered under neither also. I suppose that's possible. I don't know. Well, the policies can differ. Well, I happen to agree with Mitchell's counsel that UNUM's arguments are weak at best. Well, they're doing a lot of tap dancing and saying, oh, well, unable to earn 80% is different from losing 20%. Well, I'm sorry, but if someone says to me, you're losing 20% of your income, but by the way, you'll make 80%, I don't see a difference. But you also have two different definitions of disability working, too. I mean, Judge Ferguson also ruled against MetLife because it had a different definition of disability in its summary plan and from its insuring agreement. I agree. And we're not disputing his result on that, but it still doesn't change the result vis-a-vis UNUM. It was UNUM's policy period when this disability arose, and that really ought to have been the end of the discussion with the district court. All right. Well, there's a lot to figure out. I agree. It's a complicated case, Your Honor. And from a public policy standpoint, it's a very important one. Well, if we decide that question, I agree it is. You know, it's not only in this area of the law. I mean, the idea of getting several opportunities to decide why you're denying benefits and when you come up with an answer the next time, well, this didn't do it, so how about this argument? That's a problem. You think on the other side of your argument you shouldn't be forced to cover somebody who's not covered under a policy is certainly a legitimate argument also. Right. And I think that really we're talking about two different boxes of problems. Because the garden variety problem is the one where a plan says, well, this policy provision means you don't get coverage. Well, this one means you don't get coverage. That's a different issue from you never were under our policy. But he wasn't left without a remedy. He did have prior coverage. That carrier was, in fact, before the court, and the district court simply refused to address the question. You say the arguments are weak, but, you know, if ultimately out of this litigation it turns out that Mr. Mitchell is stuck with the UNUM coverage, I'm sure UNUM's arguments that they don't think are very weak. I'm sure they will. They'll be wrong, but I'm sure they will. Okay. Thank you. Thank you, Your Honor. The case just argued will be submitted. The next case on the calendar is United States v. Maxwell.
judges: Reinhardt, Trott, Wardlaw